# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTH EASTERN DIVISION

JAMES HILL, as Guardian and )
next friend of B.H.J., a minor,　 )
　　　　　　　　　　　　　　　 )
　　　　Plaintiffs,　　　　　 )
　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　 )　　　　Civil Action No. 5:10-cv-02593
　　　　　　　　　　　　　　　 )
MADISON COUNTY SCHOOL )
BOARD; ET AL.,　　　　　　　 )
　　　　　　　　　　　　　　　 )
　　　　Defendants.　　　　　 )

## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

COMES NOW, James Hill, as Guardian and next friend of B.H.J., a minor,

Plaintiff in the above-styled action, files his Motion to Amend the Judgments

granting summary judgment to the School Board and Individual Defendants, and,

in support thereof, shows as follows:

### PROCEDURAL BACKGROUND

On July 12, 2013, this Court entered an Order Granting in Part and Denying

in Part Summary Judgment ("Initial Order on Summary Judgment").[1]   In this

Order, the Court dismissed all of the Plaintiff's claims against Defendants Madison

County Board of Education ("School Board"), Ronnie J. Blair ("Blair"), and

Teresa Terrell ("Terrell").   This ruling included all of the state law and federal

---

[1] Entry of Partial Summary Judgment disposing of less than all claims and/or parties is not a final, appealable Order under 28 U.S.C. § 1291 sufficient to give the appellate court immediate jurisdiction unless this Court certifies otherwise.  28 U.S.C. § 1291; Rule 54(b) Fed. R. Civ. Pro.

claims against the School Board, Blair, and Terrell, including claims under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, *et seq*) ("Title IX") (raised only against the School Board), and claims under 42 U.S.C. § 1983 ("§ 1983") (raised against Blair and Terrell). The Court granted a partial summary judgment to Defendant Jeanne Dunaway ("Dunaway") as to Plaintiff's federal claim under § 1983, and Plaintiff's state law claim for the tort of outrage.[2] The Plaintiff's claims for negligence and wantonness against Dunaway remain pending before the Court.

Because Simpson had not filed a dispositive motion, the Initial Order on Summary Judgment did not rule on the pending claim against June Simpson under § 1983, or the state law claims of negligence, wantonness, and outrage.

By separate Order, pursuant to RULE 56(f) of the FEDERAL RULES OF CIVIL PROCEDURE, the Court allowed the parties to "show cause" why summary judgment should not be entered in favor of Simpson in Plaintiff's federal claim under § 1983, and state law claim for wantonness. Simpson then filed a Motion for Summary Judgment on July 26, 2013.

On October 24, 2013, this Court entered an Order granting Simpson summary judgment on Plaintiff's claim under § 1983. The Court denied

---

[2] The Defendant June Simpson ("Simpson") had not yet made a Motion for Summary Judgment when this Order was entered.

Simpson's motion for summary judgment on Plaintiff's state law claims for negligence and wantonness. The Court did not certify this Order as final pursuant to Rule 54, and did not address or otherwise dispose of the state law claims.

On December 17, 2013, this Court dismissed the state law claims against Dunaway and Simpson without prejudice to refile them in state court.

## SUMMARY OF ARGUMENT

Plaintiff James Hill, as Guardian and next friend of BHJ, files this Motion to Alter or Amend the Judgments Issued by this Court on July 12, 2013 and October 24, 2013 granting the Madison County School Board and Individual Defendants[3] summary judgment on Plaintiff's federal claims. The Court's judgments should be altered or amended because they misapply the relevant law.

The School Board is liable under Title IX for BHJ's harassment and rape because its policy of requiring a student to be caught in the act of harassment led to BHJ's injuries. In addition, the school is liable because it had notice of and was deliberately indifferent to severe and pervasive harassment that interfered with BHJ's education. The school clearly had notice of not only the harassment that BHJ faced by CJC, but also of CJC's pattern of harassment of female students and the risk of his continued abuse. Despite this knowledge, school officials took many actions that were clearly unreasonable under the circumstances, including

---

[3] Principal Blair, Assistant Principals Terrell and Dunaway, and Assistant Teacher Simpson.

leaving CJC unsupervised, not taking further steps to curb his ongoing harassment, not investigating BHJ's claim of harassment when she first reported it, and sending BHJ in as bait to catch CJC, without any regard for her safety.

The School Board and Individual Defendants are also liable for violating Plaintiff's Constitutional rights. The School Board is liable under Section 1983 because its sexual assault policies and customs caused Plaintiff's harassment and assault, and its actions pursuant to these policies and customs were taken with deliberate indifference to the consequences. The School Board's failure to supervise and train its employees also caused teachers to violate BHJ's Constitutional rights. The Individual Defendants are not entitled to qualified immunity because they violated Plaintiff's right to be free from sexual harassment, a federal right that was clearly established at the time, and were deliberately indifferent to known sexual harassment.

Plaintiff urges the Court to reconsider its opinions to correct an error of law and prevent manifest injustice.

## STANDARD OF REVIEW

A RULE 59(e) motion to alter or amend judgment may be granted based on "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (*citing In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir.1999)).

4

Even though the Principal of Sparkman Middle School, Ronnie Blair, was aware that CJC had been sexually harassing females for years, he had a policy that a student could only be disciplined for sexual harassment if two students were "caught in the act." (Deposition of Ronnie Blair, March 29, 2012, 52-4, 133). On January 22, 2010, Plaintiff BHJ complained for the second time about CJC's sexual harassment conduct towards her, including repeated requests to meet in the bathroom to have sex. (Deposition of BHJ, March 29, 2012, 60). Assistant Teacher Simpson told BHJ to agree to CJC's proposal and go to the bathroom, so that CJC could be "caught in the act." (BHJ Dep. 61). This was in direct furtherance of Principal Blair's policy. (Affidavit of June Simpson, ¶ 5). Simpson twice notified Assistant Principal Dunaway of the plan with no response. (Simpson Aff. ¶¶ 7, 8). Pursuant to the plan, BHJ met CJC in the bathroom on January 22, 2010 and was raped before any school officials arrived at the bathroom. (BHJ Dep. 70-1). A police investigation conducted that day confirmed that BHJ had been raped. *Hill v. Madison Cnty. Sch. Bd.,* No. 5:10–cv–2593–TMP (N.D. Ala. Oct. 24, 2013) (order granting partial summary judgment).

CJC had a history of sexual harassment, threats of violence, and inappropriate touching during the months and year prior to his rape of BHJ. (Blair Dep. 30-40; Simpson Aff. ¶ 4; Deposition of Teresa Terrell, March 29, 2012, 117-

19). Less than a year before he raped Plaintiff, CJC was found guilty of, and disciplined for, sexual harassment; offering a student money to beat up another student, saying "he would like to kill her"; inappropriate touching of another student; removal from a school bus for "refusing to obey the driver and keep his hands off a female student"; and threatening a student, among many other infractions including violent and harassing conduct. (Blair Dep. 126 ex. 6, Simpson Aff. ¶ 4,5; Terrell Dep. 134). Included in this history are multiple complaints over the course of the 2008-09 and 2009-10 school years that CJC was asking girls to meet him in the bathroom to have sex. (Blair Dep. 126 ex. 6, Simpson Aff. ¶ 4,5; Terrell Dep. 134).

Principal Blair was aware of these complaints against CJC as early as the 2008-09 school year. (Blair Dep. 133). With respect to CJC's asking girls to meet him in the bathroom for sex, Principal Blair stated that he did not consider this to be sexual harassment and continued to advise that under his school policy, CJC would have to be "caught in the act" before he was disciplined. (Simpson Aff. ¶ 4; Blair Dep. 53).

Only days before B.H.J. was raped, another student complained that CJC sexually harassed her in class. (Blair Dep. 30-31; Terrell Dep. 144, 168). As a result, CJC was put on in-school suspension, but then was allowed to roam the hallways of the school unsupervised as part of his cleaning duties. (Blair Dep. 44,

153-4; Terrell Dep. 189-90). A few days later, CJC raped BHJ when she went to try to catch him in the act per her teacher's instructions. CJC was still on in-school suspension at the time. (Blair Dep. 44).

## ARGUMENT

### I. The Judgment on the Title IX Claim Should be Altered or Amended Because it Conflicts with Controlling Law.

A school may be liable for student-on-student sexual harassment if its official policy caused the harassment, *see Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1177-79 (10th Cir. 2007), or if it was deliberately indifferent to known acts of peer sexual harassment. *Davis v. Monroe County Board of Education*, 526 U.S. 629, 648 (1999); *see also Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007) (noting that a school is liable in damages under Title IX when the harassment is sufficiently "severe, pervasive, or objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit," an "appropriate person" has "actual knowledge" of the harassment, and the school's response amounted to "deliberate indifference.").

### A. The school is liable under title IX because its policy caused Plaintiff to be subjected to harassment and rape.

The standards of notice and deliberate indifference established by the Supreme Court for sexual harassment cases involving damages liability need not

be satisfied when a Title IX violation is caused by an official policy. *See Simpson*, 500 F.3d at 1178-79 (holding that university may be liable under Title IX for rape of female students based on official policy of hosting football recruiting parties and lack of supervision at such parties despite knowledge of risk of assaults). The Supreme Court requires notice and deliberate indifference to ensure that schools are held liable for their own actions in Title IX sexual harassment cases, but as the Tenth Circuit noted, those elements are not necessary when the violation can be traced directly to school policy or action. Here, Principal Blair's policy that students must be "caught in the act" and the resulting plan to send BHJ in to the bathroom to catch CJC is precisely what caused BHJ's injuries. RSJ 15-15. Therefore, the school is liable for BHJ's harassment and rape.

**B.** **The school is liable under title IX because it was deliberately indifferent to a known hostile environment harassment.**

This Court erroneously held that the harassment faced by BHJ did not rise to the level of a hostile environment. First and foremost, BHJ was raped by Defendant CJC as a direct result of a teacher's instructions that were issued in accord with furtherance of school policy. The law is clear that a single instance of sexual assault is sufficient to create a hostile environment. *See*, *e.g.*, *Jennings v. Univ. of N.C.*, 444 F.3d 255, 268, 274 n.12 (4th Cir. 2006) (acknowledging that a single incident of sexual assault or rape could be sufficient to raise a jury question

8

about whether a hostile environment exists, and noting that courts look to Title VII cases for guidance in analyzing Title IX sexual harassment claims); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 n.4 (6th Cir. 2000) ("'[w]ithin the context of Title IX, a student's claim of hostile environment can arise from a single incident'" (*quoting Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62 (D. Me. 1999))); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (explaining that rape and sexual abuse "obviously qualif[y] as…severe, pervasive, and objectively offensive sexual harassment"); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 271 (E.D.N.Y. 2009) ("Given that a single instance of sexual assault may rise to the level of 'pervasiveness' as a matter of law, I find that there is a material issue of fact regarding whether the assault on plaintiff was sufficient to trigger Title IX liability."); *see also Berry v. Chi. Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (finding that under Title VII, "a single act can create a hostile environment if it is severe enough, and instances of uninvited physical contact with intimate parts of the body are among the most severe types of sexual harassment"); *Turner v. Saloon, Ltd.*, 595 F.3d 679, 686 (7th Cir. 2010) (noting that under Title VII "'[o]ne instance of conduct that is sufficiently severe may be enough,'" which is "especially true when the touching is of an intimate body part" (*quoting Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007))); *McKinnis v. Crescent Guardian, Inc.*, 189 F. App'x 307, 310 (5th Cir. 2006) (holding that "'the

deliberate and unwanted touching of [a plaintiff's] intimate body parts can constitute severe sexual harassment'" in Title VII cases (*quoting Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005))).

BHJ's harassment and rape had such a deleterious effect on her access to education that she was denied "equal access to [the school's] resources and opportunities." Davis 526 U.S. at 631. After the day of the rape, she does not remember returning to Sparkman Middle School again. See *Williams* 477 F.3d at 1298 (although the school "neither formally forced [plaintiff] to leave nor banned her from returning, the discrimination in which they engaged or they allowed to occur on campus caused [plaintiff] to withdraw and not return."). She "persisted in an almost non-communicative state," and was "under the consistent care of both a psychologist and a psychiatrist." Complaint ¶ 46. The rape caused her pain, emotional trauma, reduction in grades, and depression, among other injuries, and affected her ability to deal with others at her new school. Such evidence is more than enough to show that she was effectively denied access to educational opportunities at the school. See *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003) (trouble concentrating on studies, humiliation, emotional distress, desire to not attend class, and inability to sleep all rendered issue of hostile environment one for trier of fact.)

In addition, in the months and year leading up to the rape, CJC harassed multiple students, including propositioning other students for sex. These facts demonstrate the existence of a generally hostile environment that interfered with female students' ability to benefit from their education. *See Davis*, 526 U.S. at 649 (suggesting that female student plaintiff may be able to show that Board subjected her to discrimination by failing to respond over a period of five months to *complaints of boy's misconduct by plaintiff and other female students*); *Jennings*, 482 F.3d at 695 (holding that incidents of sexual harassment directed at other students are relevant to determining whether the plaintiff was subjected to a hostile environment). Thus, the harassment that BHJ faced prior to and including the rape, which included two weeks of CJC pressuring her to have sex with him in the bathroom, was part and parcel of a **hostile environment** that the **school allowed to continue**, through their failure to put an end to CJC's ongoing harassment and through their plan to send BHJ in to the bathroom to catch CJC.

The Court also misapplied the requirement of actual notice. The facts demonstrate clear notice to appropriate officials of a hostile environment. While the Court acknowledges that the Assistant Principal is an appropriate official, it claims that her being informed of the plan to send BHJ into the bathroom to catch CJC in the act did not put her on notice of severe, pervasive and objectively offensive harassment that would interfere with BHJ's educational opportunities.

That argument fails for several reasons.  First, inherent in the school-devised plan was a high risk that CJC would actually carry out the threatened rape – and that is in fact what happened.  Even assuming, as the Court does, that the Assistant Principal understood this to be an isolated event of harassment against BHJ, the school still had actual notice.  Rape by definition constitutes a hostile environment.

In addition to being put on notice of the school-devised plan to send BHJ into the bathroom where she was at risk of being and was in fact raped, the Court overlooked that the school is liable if it had notice of a substantial risk of abuse by particular students and failed to act.  *See Williams*, 477 F.3d at 1293 (holding that school had actual knowledge of risk of abuse based on student's past misconduct at other schools); *see also Doe v. School Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010) ("[N]o circuit has interpreted *Gebser's* actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff *herself*").

Here, several appropriate school officials had notice of CJC's significant history of severe and pervasive harassment, and the school knew that its responses were inadequate given that the harassment persisted.  These facts are more than enough to put the school on notice of a substantial risk that CJC would continue his pattern of abuse.  *See Doe*, 604 F.3d at 1258-59 (holding that school had actual notice of teacher's harassment of student based on two prior complaints against

same teacher and stating that "the . . . fact that these prior incidences . . . did not escalate to a violent sexual assault akin to Doe's cannot as a matter of law absolve the School Board of Title IX liability") and ("[L]esser harassment may still provide actual notice of sexually violent conduct, for it is the risk of such conduct that the Title IX recipient has the duty to deter.") ; *Williams*, 477 F.3d at 1294 (holding that university had actual notice of rape of plaintiff where she alleged that University actively recruited player and failed to sufficiently monitor his behavior despite notice of a history of lesser sexual harassment). In addition, the school's faulty policy and procedures, which do not require teacher training as to sexual harassment and investigative requirements, coupled with the principal's policy of requiring students to be caught in the act before any disciplinary action is taken, **effectively created a hostile environment** and exacerbated the risk of abuse.

Finally, this Court's holding that the school was not deliberately indifferent was an error. A school is deliberately indifferent if it responds to known harassment in a way that is "clearly unreasonable in the light of the known circumstances." *Davis*, 526 U.S. at 648. The school in this case was deliberately indifferent both in its inadequate investigation and discipline of CJC's ongoing harassment of female students and in its decision to use BHJ as bait in an operation to catch CJC.

In determining that the school was not deliberately indifferent, this Court neglected to consider a key element of the deliberate indifference analysis—namely, the school's response to CJC's pattern of sexual harassment and threatening conduct.  As early as the 2008-09 school year, Principal Blair was aware of allegations that CJC was propositioning girls to meet him in the restroom for sex.  While this Court notes that CJC was given various forms of discipline, the law is clear that if the discipline is ineffective, then the school must do more.  *See Doe*, 604 F.3d at 1261 ("[W]here a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior."); *see also* U.S. Dep't of Educ. Office of Civil Rights, Revised Sexual Harassment Guidance at 12-13 (Jan. 2001), *available at* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf [hereinafter OCR 2001 Guidance] (same).

Moreover, far from supervising CJC closely given his history of harassment, on the day of Plaintiff's assault and on the preceding days leading up to the assault, CJC was allowed to roam the halls of the school unsupervised during an in-school suspension.  Allowing a student with CJC's history of known physical and verbal harassing conduct to be unsupervised during a suspension was "clearly unreasonable in the light of the known circumstances."  *Davis*, 526 U.S. at 648. And when Simpson reported these allegations to Principal Blair in January 2009,

he did not investigate, which the school is required to do under Title IX, but instead instructed Simpson that CJC would have to be "caught in the act" before any disciplinary action could be taken against him. These actions are unreasonable under the circumstances, helped create the hostile environment and violate Title IX.

BHJ's complaint to her teacher's aide about being pressured to have sex with CJC in the bathroom occurred against this backdrop of ongoing unchecked harassment, and should have triggered an investigation by the school and interim measures to protect BHJ from any further harassment. *See* OCR 2001 Guidance at 15 (stating that once student complains of sexual harassment, school must conduct prompt, thorough and fair investigation); U.S. Dep't of Education, Office of Civil Rights, Dear Colleague Letter at 2 (April 2011) *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf [hereinafter Dear Colleague Letter].[4] Instead, when BHJ reported this ongoing harassment to an appropriate official, the school's response was to tell her that CJC had to be

---

[4] Schools are also required to have Title IX grievance procedures and policies, as well as a Title IX Coordinator, and are required to provide training in these procedures and policies to the school community. *See* 34 C.F.R. §106.9 and 106.8a-b; 2001 OCR Guidance at 19-21. Far from having any of these required elements in place, the School Board here had did not require teacher training as to sexual harassment and investigative requirements, and the principal had an unwritten policy of requiring students to be caught in the act before imposing any disciplinary action. These actions alone constitute violations of Title IX. *See, e.g.* OCR Resolution Letter to University of Montana-Missoula, Re: DOJ Case No. DJ 169-44-9, OCR Case No. 10126001 (May 9, 2013) *available at* http://www2.ed.gov/documents/press-releases/montana-missoula-letter.pdf (finding the University in violation of Title IX because it had multiple policies regarding sexual harassment that were inconsistent with each other and did not cover all forms of harassment, did not provide adequate training to some employees on the nature of sexual assault and how to conduct an investigation, and failed to carry out investigations that were adequate, reliable, and impartial).

"caught in the act" before any disciplinary action could be taken against him and to ask BHJ to meet CJC in the bathroom to help the school catch him in the act. BHJ's rape was the direct result of the school's deliberate indifference to her complaint and to the risk of her being sexually assaulted.[5] Sending BHJ into the bathroom with CJC, who has a known history of sexual harassment and assault, is the essence of an action that is clearly unreasonable under the circumstances. Thus, the school is liable for BHJ's rape and the harm that she suffered as a result. *See Williams*, 477 F.3d at 1295-96 (upholding plaintiff's Title IX claim against school for being raped by student with known history of misconduct).

This Court's statement that "there never was an intent to subject BHJ to sexual harassment or assault" has a bearing on whether the district was deliberately indifferent to the ongoing harassment or not. The deliberate indifference standard does not ask what the school's intent was in taking particular actions, but rather whether the school's actions were clearly unreasonable under the circumstances. *Cf. Pederson v. Louisiana State University*, 201 F.3d. 388, 411 (5th Cir. 2000) (holding that university's motives are irrelevant in discrimination analysis). Here, the school's actions were clearly unreasonable because instead of fulfilling their

_____

[5] This Court's holding that none of these allegations are "so clear or substantiated as to reasonably put the school administrators on notice that CJC was involved in serious or pervasive harassment," *Hill*, 2013 WL 3712330 at *8, is particularly troubling given that many of the incidences were unsubstantiated because they were not investigated by the school, a failure which is itself a clear violation of the school's obligations under Title IX. See OCR 2001 Guidance at 15 (stating that once student complains of sexual harassment, school must conduct prompt, thorough and fair investigation); Dear Colleague Letter at 2.

Title IX obligations to investigate BHJ's complaint and protect her from further harassment, **the school's actions caused her to be sexually assaulted.**

## II. The Judgment on the Section 1983 Claim Should be Altered or Amended Because it Conflicts with Controlling Law.

The Supreme Court has held that a school district is liable for the violation of an individual's right to equal protection under Section 1983 "when execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dep't of Soc. Serv*., 436 U.S. 658, 694 (1989). A failure to supervise or train employees can also form the basis of §1983 liability. *Wyke v. Polk Cnty. Sch. Bd*., 129 F.3d 560, 568 (11th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 386–92 (1989); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997) ("In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.") These circumstances occur where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)

(citing *Canton*, 489 U.S. 389-91). The failure to train must evidence a "deliberate indifference." *Id.*

A Section 1983 claim against an individual defendant requires a burden-shifting framework. The defendant has the burden of proving that she or he was performing a discretionary function at the time of the incident in question. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). If defendant meets that burden, the burden then shifts to plaintiff to prove that the defendant is not eligible for qualified immunity because he or she violated a clearly established right, of which the defendant was aware. *Snider v. Jefferson State Community College*, 344 F. 3d 1325, 1327 (11th Cir. 2003).

**A.     The School Board is liable under Section 1983.**

The School Board is liable for the violation of Plaintiff's §1983 right because the school's sexual assault policies and customs caused Plaintiff's harassment and assault, and its actions pursuant to these policies and customs were taken with deliberate indifference to the consequences. In holding otherwise, this Court overlooked settled law under the Supreme Court and the Eleventh Circuit that a policy does not need to be "officially adopted" by the school board, nor must a custom receive formal approval through the body's official decision making channels, in order for a school district to be held liable. *See Hazel v. Sch. Bd. of Dade Cnty., Fla.*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (*citing Monell*, 436

U.S. at 690–91; *Porter v. Duval Cnty. Sch. Bd*., 2010 WL 1252177 (M.D. Fla. Mar. 26, 2010) (holding that a policy could be "created by an official of such rank that he or she could be said to be acting on behalf of the municipality") *aff'd*, 406 F. App'x 460 (11th Cir. 2010). The Principal's policies or customs in this case, which are well-documented by Plaintiff, were certainly created by an official that could be said to be acting on behalf of the municipality.

It is the stated policy of the school Principal that students would be disciplined for harassment only if they were "caught in the act." Blair Dep. 53. Despite the fact that the administration at the school does not conduct training regarding the policies related to sexual harassment or student conduct, Blair Dep. 21, and Assistant Teacher Simpson received no training despite her repeated requests for such training, RSJ at 4, Simpson nevertheless clearly understood this particular policy. Indeed, it was the fundamental principle behind her decision to expose Plaintiff to continued harassment. The policy of requiring students to be "caught in the act" before enacting disciplinary measures flies in the face of Title IX regulations requiring a school to take immediate and appropriate steps to investigate a complaint of sexual harassment. The inquiry must be "prompt, thorough, and impartial." Dear Colleague Letter at 2. If harassment is found, the school is required to take "prompt and effective steps reasonably calculated to end harassment, eliminate any hostile environment and its effects, and prevent the

harassment from recurring." Dear Colleague Letter at 3. Following the Principal's policy or custom of not taking action against a student for harassment unless he or she was caught in the act is precisely what caused the injury against BHJ. Asking BHJ to serve as bait so that this policy could be implemented was deliberately indifferent to the known or obvious risk of her being raped.

The school also failed in its basic obligations to have appropriate policies in place and to ensure that the requisite investigations of sexual harassment complaints occur. According to the Principal, no one at the school was responsible for investigating a complaint of sexual harassment, and many complaints will not be investigated at all because "you've got one word against another without witnesses." RSJ at 5. Again, this is in clear violation of Title IX, which requires schools to take immediate and appropriate steps in response to a complaint of harassment. Furthermore, according to Assistant Principal Terrell, if a student complained of sexual harassment and the accused harasser denied the action, then the disciplinary form was simply thrown away. These illegal school policies and customs allowed CJC's pattern of abuse to continue and ultimately led to the harassment and assault that BHJ faced. Thus, this Court erred in holding that the School Board is not liable under Section 1983.

The School Board's failure to supervise and train its employees also caused teachers to violate BHJ's Constitutional rights. The school administration did not

train its employees in proper sexual harassment policy and procedures, and instead taught employees to implement policies and procedures that were illegal on their face. Although Ms. Simpson was designated as a school official to whom complaints could be made, she received "no proper training regarding student conduct matters or complaints of sexual harassment, despite her repeated requests for such training." RSJ at 4. This failure to adequately train or supervise is the policy of the school. "No one at SMS trains either the teachers or students on the sexual harassment policy, or the reporting procedures in the policy." RSJ at 3. Had the teachers and administrators been properly trained in their obligations under Title IX, they would have known that a policy of having to catch students in the act is patently illegal. Instead, Principal Blair's promulgation of this policy, Simpson's implementation of it, and Dunaway's tacit approval of the policy directly caused the violation of Plaintiff's Constitutional right. Their conduct was deliberately indifferent to the known consequences: the near certainty that Plaintiff would experience further harassment.

The Court's characterization of the Plaintiff as "willing" further exacerbates the errors in its Section 1983 analysis. Throughout the opinion, the Court erroneously refers to Plaintiff as a "willing" participant in the school's scheme to have her "caught in the act." *Hill*, 2013 WL 3712330 at *13, *16, * 23. Yet Plaintiff provides clear evidence that she told Simpson "she did not like Defendant

Cundiff and she did not want to go to the bathroom with him." Complaint ¶ 40. It defies logic how the Court could construe Plaintiff's behavior as willing, particularly in the wake of her own complaints about CJC's conduct.

**B.    The individual Defendants are liable under Section 1983.**

Finally, This Court erred in holding that the Individual Defendants Blair, Dunaway, Terrell, and Simpson are entitled to qualified immunity. At the time of the events in question, it was firmly established that peer sexual harassment can violate a student's 14th Amendment right to equal protection. *Fitzgerald v. Barnstable*, 555 U.S. 246, 257 (2009). Moreover, school officials' legal duties regarding how to respond to sexual harassment and violence claims were clearly established and the Defendants failed to follow the law. *See* OCR 2001 Guidance at 15.

The Court misapplied the law by requiring Plaintiff to point to a case where the facts are "reasonably close" to the facts at bar in order to prove that the Defendants violated an established right. In order to show that Defendants' conduct violated her Constitutional rights, Plaintiff "does not have to show that the precise conduct in question has been held unlawful," but simply must establish that the Defendant had "fair warning that alleged treatment of the plaintiff was unconstitutional." *Williams,* 477 F.3d at 1300 (11th Cir. 2007) (*quoting Willingham v. Loughman,* 321 F.3d 1299, 1301 (11th Cir. 2003). Here, Plaintiff

more than met that standard. The law was clear that, among other things, school officials must respond promptly to allegations of sexual harassment and continue to do so if initial measures are unsuccessful. Not only did the Defendants fail to address BHJ's complaint of harassment, but they chose a course of action that was deliberately indifferent to the risk of her being sexually assaulted. There is no question that Defendants' actions violated clearly established law and that they should not enjoy qualified immunity for their role in violating BHJ's constitutionally protected rights to be free from sexual harassment.

This Court also erred in dismissing the applicability of *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250-51 (10th Cir. 1999). As the Tenth Circuit held in *Murrell*, principals and teachers can be liable for a § 1983 Equal Protection violation if they were deliberately indifferent to known sexual harassment. Here, as set forth above in Section I, the Individual Defendants knew of CJC's numerous instances of harassment and yet acted in ways that were clearly unreasonable under the circumstances, leading to BHJ's harassment and rape. Thus, they were deliberately indifferent and liable under Section 1983 for violating BHJ's right to equal protection.

WHEREFORE, Plaintiff respectfully requests this Court to alter or amend its grants of summary judgment to the School Board and Individual Defendants and requests that the Court deny the Defendants' Motions for Summary Judgment.

Respectfully submitted this the 30th day of December, 2013.

s/ Eric J. Artrip
Eric J. Artrip (ASB-9673-I68E)
Teri Ryder Mastando (ASB-4507-E53T)
MASTANDO & ARTRIP, LLC
301 Washington Street, Suite 302
Huntsville, Alabama 35801
Phone:        (256) 532-2222
Fax:          (256) 513-7489
artrip@mastandoartrip.com
teri@mastandoartrip.com

Neena K. Chaudhry
*(pro hac vice application pending*
Fatima Goss Graves
*(pro hac vice application pending)*
NATIONAL WOMEN'S LAW CENTER
11 Dupont Circle, Suite 800
Washington, DC 20036
Phone: (202) 588-5180
Fax: (202) 588-5185
nchaudry@nwlc.org
fgraves@nwlc.org

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of December, 2013, I electronically filed the foregoing with the Clerk of Court and have served a copy of same upon the following by electronic service, by facsimile or by placing a copy of same in the United States mail, postage prepaid and properly addressed.

Clay R. Carr, Esq.
BOARDMAN, CARR, BENNETT, WATKINS,
HILL & GAMBLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043

H. McGriff Belser, III, Esq.
EDWARDS, BELSER & SMITH
123 Lee Street Northeast, Suite A
Decatur, AL 35601

s/ Eric J. Artrip
Eric J. Artrip